UNITED STATES of America,
Plaintiff–Appellee,

v.

Pedro Carrillo PAYAN, Defendant–
Appellant.

No. 92–1094.

United States Court of Appeals,
Fifth Circuit.

May 31, 1993.

Michael R. Gibson, El Paso, TX, for defendant-appellant.

Denise B. Williams, Tanya K. Northrup, Asst. U.S. Attys., Richard H. Stephens, U.S. Atty., Lubbock, TX, for plaintiff-appellee.

Before REAVLEY, KING, and WIENER, Circuit Judges.

WIENER, Circuit Judge:

Pedro Carrillo Payan appeals several aspects of his criminal convictions relating to the transportation in interstate and foreign commerce of stolen property. He also appeals his resulting sentence. Finding no reversible error, we affirm.

## I

## FACTS AND PROCEEDINGS

Between October, 1990 and June 1991, farm equipment began disappearing from the Texas panhandle and northeastern New Mexico. During this same period, a relative of one of the dispossessed tractor owners noticed similar tractors appearing in Mexico. Law enforcement officers also received information that Payan was exporting stolen tractors from the United States and selling them in Mexico. An arrest warrant was issued for Payan, and federal and state authorities at the United States Customs port of entry at Columbus, New Mexico were alerted to watch for stolen farm equipment.

In June, 1991, Mark Ancira was arrested while attempting to transport into Mexico two tractors that had been stolen in Texas.

At the time of his arrest, Ancira was in possession of fraudulent invoices for the tractors made out to Payan as purchaser. Payan was arrested the next day when he entered the United States from Mexico.

Payan was indicted subsequently on one count of conspiracy to transport stolen goods in interstate and foreign commerce, and fifteen counts of transportation of stolen goods in interstate and foreign commerce.[1]

At trial, the government introduced credible evidence that Payan and Ancira cooperated in the transportation and disposal of substantially all of the farm equipment stolen from this geographic area during the period in question. Payan was subsequently convicted on the conspiracy count and on eleven of the substantive counts. Consequently, Payan was sentenced to serve a prison term followed by supervised release; and to pay a fine, restitution, and a special assessment. Payan timely appealed.

## II

### ANALYSIS

In this appeal, Payan raises four points of error: (1) Whether the Wharton Rule or the Double Jeopardy Clause of the Fifth Amendment were violated by his conviction on both the conspiracy and the underlying substantive counts for transportation of stolen property; (2) whether the court violated the rule of *Bruton v. United States*[2] by not declaring a mistrial when a witness referred to an out of court statement made by a non-testifying codefendant; (3) whether the court violated Rule 615 of the Federal Rules of Evidence by failing to sequester two prosecution witnesses; and (4) whether the court improperly conditioned Payan's release to supervision on

his payment of the fine, restitution, and special assessment.

### A. Wharton's Rule and Double Jeopardy

Payan insists that, under the circumstances of the instant case, his convictions for both transportation of stolen property and conspiracy to transport stolen property cannot stand. Two related principles underlie this claim. First, Wharton's Rule generally prohibits convictions for both a substantive offense and conspiracy to commit that offense *if* the substantive offense necessarily requires the participation and cooperation of two persons.[3] "[W]here it is impossible under any circumstances to commit the substantive offense without cooperative action, the preliminary agreement between the same parties to commit the offense is not an indictable conspiracy."[4] Second, the doctrinally related but distinct Double Jeopardy Clause prohibits conviction for two offenses which have identical elements.[5]

#### 1. Wharton's Rule

Payan acknowledges that as a general rule a person can be convicted of both transportation of stolen goods and conspiracy to commit that same offense. Nonetheless, he argues that the instant case is distinguishable because the government relied on both the statute prohibiting the transportation of stolen goods[6] and the statute providing for aider and abettor responsibility[7] in obtaining convictions against him on the substantive counts. This latter statute provides:

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the

---

1. *See* 18 U.S.C. §§ 2, 2314.

2. 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

3. *See generally Iannelli v. United States*, 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975).

4. *Gebardi v. United States*, 287 U.S. 112, 122, 53 S.Ct. 35, 37, 77 L.Ed. 206 (1932).

5. *See Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990); *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *Ladner v. Smith*, 941 F.2d 356 (5th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1665, 118 L.Ed.2d 387 (1992).

6. 18 U.S.C. § 2313.

7. 18 U.S.C. § 2.

United States, is punishable as a principal.[8]

Payan argues that, by definition, a conviction based solely on aider and abettor responsibility requires the involvement of at least two persons in the criminal activity; one cannot aid and abet himself. Likewise, he continues, a conspiracy requires at least two persons. Payan next observes that the evidence introduced at trial established that two and only two persons (Payan and Ancira) were involved in the conspiracy and in the substantive offenses. Further, he asserts, the evidence established that he only "aided and abetted or caused [Ancira] to violate the law." Consequently, Payan's argument concludes, his convictions on the substantive offenses were based solely on aider and abettor responsibility, so that under the facts of the instant case both his substantive convictions and his conviction for conspiracy cannot stand.

Although Payan's argument initially sounds appealing, it cannot withstand scrutiny. First, Payan improperly treats 18 U.S.C. § 2 (aiding and abetting) as the target offense. Instead, 18 U.S.C. § 2313 (transportation of stolen goods) was the basis of Payan's indictment and his convictions. 18 U.S.C. § 2 does not define a crime, but rather simply allows one who aids or abets the commission of a substantive offense to be punished as a principal.[9] Additionally, 18 U.S.C. § 2 "is an alternative charge in every count, whether explicit or implicit."[10] Under Payan's reasoning, no defendant could ever be convicted for both conspiracy to commit a substantive offense and the substantive offense itself, as 18 U.S.C. § 2 is implicit in every criminal charge. Such a result, however, would be contrary to well established law. "[I]t is well recognized that in most cases separate sentences can be imposed for the conspiracy to do an act and for the subsequent accomplishment of that end."[11]

Second, "Wharton's Rule applies only to offenses that *require* concerted criminal activity, a plurality of criminal agents."[12] Only when it is *impossible under any circumstances* to commit the substantive offense without cooperative action, does Wharton's Rule bar convictions for both the substantive offense and conspiracy to commit that same offense.[13] For example, Wharton's Rule has traditionally been applied to crimes such as adultery and dueling, offenses that are impossible to commit absent the participation of at least two persons. In contrast, it is quite possible for one person, acting alone, to transport stolen goods.

■ Third, the Supreme Court has instructed that a Wharton inquiry should focus on the statutory elements of the substantive offense rather than the evidence used to prove those elements at trial.[14] As the statutory elements of transporting stolen goods do not include a multiplicity of actors, Wharton's Rule is not made viable by the fact that the evidence adduced at trial may have focused on actions of two defendants in connection with transporting the stolen tractors.

Fourth, the principles underlying the creation of Wharton's Rule do not support its application in the instant situation. Conspiracies generally pose dangers that are distinct from those of the immediate underlying substantive crime. Collective criminal activity increases the chances that the criminal objective will be attained, decreases the chances that the involved individuals will abandon the criminal path, makes larger criminal objective attainable, and increases the probability that crimes unrelated to the original purpose for which the group was formed will be committed.[15]

The major premise underlying Wharton's Rule, however, is that agreements to commit certain crimes do not appear to present these

---

8. *Id.*

9. *United States v. Walker*, 621 F.2d 163, 166 (5th Cir.1980), *cert. denied*, 450 U.S. 1000, 101 S.Ct. 1707, 68 L.Ed.2d 202 (1981).

10. *Id.; United States v. Bullock*, 451 F.2d 884, 888 (5th Cir.1971).

11. *Iannelli*, 420 U.S. at 777–78, 95 S.Ct. at 1290.

12. *Iannelli*, 420 U.S. at 785, 95 S.Ct. at 1293.

13. *Gebardi*, 287 U.S. at 122, 53 S.Ct. at 37.

14. *Iannelli*, 420 U.S. at 780, 95 S.Ct. at 1291.

15. *Id.* at 778, 95 S.Ct. at 1290.

distinct dangers.[16] These crimes, such as the classic examples of adultery and dueling, "are characterized by the general congruence of the agreement and the completed substantive offense."[17] In such offenses, the parties to the agreement are the only persons who participate in the commission of the substantive offense, and are the only persons who bear the immediate consequences of the crime.

As the Supreme Court instructs us, "a legal principle commands less respect when extended beyond the logic that supports it."[18] Unlike the traditional Wharton's Rule offenses, the transportation of stolen goods has immediate consequences for persons who are not parties to the criminal agreement. The significant differences in the characteristics and consequences of the instant offense and the kinds of offenses that gave rise to Wharton's Rule "counsel against attributing significant weight to the presumption that the Rule erects."[19]

Fifth, Wharton's Rule "has continued vitality only as a judicial presumption, to be applied in the absence of legislative intent to the contrary."[20] The legislative history of the federal statutes regarding aiding and abetting[21] and conspiracy[22] indicates that Congress found no duplication or conflict between these and their predicate crimes, but instead intended that each be treated as an independent offense or basis of responsibility. Both were part of the revision and codification of Title 18 in 1948.[23] All federal criminal laws in effect at that time were subject to that effort, which included the "reconciliation of conflicting laws" and "consolidation of similar provisions."[24]

The Reviser's Notes to § 2 expressly provide that:

> The section as revised *makes clear the legislative intent* to punish as a principal not only one who directly commits an offense and one who "aids, abets, counsels, commands, induces or procures" another to commit an offense, but also anyone who causes the doing of an act which if done by him directly would render him guilty of an offense against the United States.
>
> It *removes all doubt* that one who puts in motion or assists in the illegal enterprise but causes the commission of an indispensable element of the offense by an innocent agent or instrumentality, is guilty as a principal even though he intentionally refrained from the direct act constituting the completed offense.[25]

Congress similarly intended to punish conspiracies separately from substantive offenses. All conspiracy offenses were consolidated in § 371 with two notable exceptions: situations in which (1) the conspiracy would constitute the only offense and (2) the punishment provided in § 371 would not be commensurate with the gravity of the offense.[26] Separate conspiracy provisions were retained or added to Title 18 to address such situations, yet no such provision exists for conspiracies involving either aiding and abetting under § 2 or transporting stolen goods under § 2314.[27] To the contrary, the appropriateness of punishment under § 371 for a conspiracy to transport stolen goods in interstate commerce is specifically discussed in the Reviser's Notes to that section.[28]

■ Furthermore, the Reviser's Notes to § 2314 expressly address the interrelation-

16. *Id.* at 783 n. 16, 95 S.Ct. at 1293 n. 16.

17. *Id.* at 782, 95 S.Ct. at 1292.

18. *Id.* at 786, 95 S.Ct. at 1294.

19. *Id.* at 786, 95 S.Ct. at 1294.

20. *Id.* at 782, 95 S.Ct. at 1292.

21. 18 U.S.C. § 2.

22. 18 U.S.C. § 371.

23. *See* 18 U.S.C. §§ 2, 371.

24. H.R.Rep. No. 304, 80th Cong., 1st Sess. (1947), *reprinted in*, 1948 U.S.Code Cong.Serv. 2434, 2434–35 (Sp.Pamph.).

25. *Id.*, 1948 U.S.Code Cong.Serv. at 2448–49 (emphasis added).

26. *Id.* at 2476.

27. *Id.*

28. *Id.*

ship between that section and §§ 2 and 371 in explaining the 1948 revisions to § 2314:

> Reference to persons causing or procuring was omitted as unnecessary in view of definition of "principal" in section 2 of this title.
>
> . . . .
>
> Section 418a of title 18, U.S.C., 1940 ed., relating to conspiracy, was omitted as covered by section 371 of this title, the general conspiracy section.[29]

Finally, we note that other circuit courts which have addressed the issue have uniformly refused to apply Wharton's Rule to 18 U.S.C. § 2.[30]

We find that under these circumstances Wharton's Rule does not preclude conviction for both the interstate transportation of stolen goods (even when obtained in conjunction with an instruction on aiding-and-abetting) and conspiracy to commit that same substantive offense.

2. Double Jeopardy

■ The Double Jeopardy Clause of the Fifth Amendment protects against, inter alia, multiple punishments for the same offense imposed in a single prosecution.[31] The test to determine whether conduct that violates two separate statutory provisions constitutes a single offense was first set out in *Blockburger v. United States:*[32]

The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.[33]

As with Wharton's Rule, a double jeopardy analysis focuses on the elements of offenses charged, not on the evidence adduced at trial.[34]

■ Payan alleges, without citation of supporting authority, that his convictions violate the Double Jeopardy Clause because each element of the conspiracy statute is replicated in 18 U.S.C. § 2314 when it is coupled with the aiding and abetting statute. We disagree.

To Payan's detriment, the rule is well established that, "there is no violation of a defendant's Fifth Amendment right against double jeopardy when [he is] convicted and punished for aiding and abetting as well as conspiring to commit the same [substantive] offense."[35] Convictions for the interstate transportation of stolen goods and conspiracy to commit that same offense each require proof of elements not required for conviction of the other offense. A conviction for conspiracy to commit a substantive offense requires proof of an *agreement* to commit an

---

29. *Id.* at 2608–09.

30. *United States v. Castro,* 887 F.2d 988, 996 (9th Cir.1989); *United States v. Cerone,* 830 F.2d 938, 945–46 (8th Cir.1987), *cert. denied,* 486 U.S. 1006, 108 S.Ct. 1730, 100 L.Ed.2d 194 (1988); *United States v. Buchanan,* 830 F.2d 146, 147 (10th Cir.1987); *United States v. Huber,* 772 F.2d 585, 591 (9th Cir.1985); *United States v. Coffin,* No. 82–3607, 714 F.2d 143 (6th Cir.1983) (table decision available on LEXIS).

31. *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977). The Double Jeopardy Clause also protects against successive prosecutions of the same offense. *Id.* at 165–67, 97 S.Ct. at 2225–26. The instant case, however, does not involve such a situation.

32. 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Although the *Blockburger* opinion does not expressly discuss the Double Jeopardy Clause, it has been widely treated as a seminal case in the analysis of double jeopardy problems.

*See e.g. Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990); *Brown v. Ohio,* 432 U.S. at 166, 97 S.Ct. at 2225.

33. *Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182. Although the *Blockburger* test is dispositive of claims involving multiple punishments imposed in a single prosecution, such as the instant case, additional analysis is necessary in cases involving claims of successive prosecutions. *See Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548; *Brown v. Ohio,* 432 U.S. at 166–67, 97 S.Ct. at 2225–26; *Ladner v. Smith,* 941 F.2d 356 (5th Cir.1991).

34. *United States v. Cowart,* 595 F.2d 1023, 1029 (5th Cir.1979); *see Brown v. Ohio,* 432 U.S. at 166, 97 S.Ct. at 2225; *Iannelli v. United States,* 420 U.S. at 785 n. 17, 95 S.Ct. at 1293 n. 17.

35. *United States v. Cowart,* 595 F.2d at 1033; *United States v. Goff,* 847 F.2d 149, 175 (5th Cir.), *cert. denied,* 488 U.S. 932, 109 S.Ct. 324, 102 L.Ed.2d 341 (1988).

offense against the United States.[36] In contrast, neither aiding and abetting nor transportation of stolen goods requires proof of an agreement.[37] A conviction for the transportation of stolen goods does, however, require proof of several elements not essential to a conviction for conspiracy to transport stolen goods.[38] For example, a conviction for the transportation of stolen property requires that the stolen goods actually be transported in interstate or foreign commerce. Liability for conspiracy to transport stolen goods may attach without the goods ever actually moving in commerce. Payan's double jeopardy argument fails in light of this analysis.

### B. Bruton *Violation*

Payan complains that the government improperly introduced evidence of a possibly incriminating out-of-court statement made by a nontestifying codefendant, in violation of *Bruton v. United States.*[39] In *Bruton,* the Supreme Court held that when, in a joint criminal trial of codefendants, an out-of-court statement is made by a nontestifying codefendant and that statement expressly incriminates a second codefendant, the statement cannot be introduced at the joint trial, even if the trial court instructs the jury that it should not consider the statement against the second codefendant.[40]

In the instant case, the out-of-court statement at issue was made to an investigating officer by Ancira after his arrest. At trial, the government asked that officer if Ancira had a comment about the federal charges against him. In response, the officer repeated Ancira's statement: "You don't know what you are dealing with. There is [sic] rich and powerful people involved."

Payan had the jury excused and objected to the admission of this statement under

*Bruton,* arguing that the reference to "rich and powerful people" implicated Payan—his own attorney had previously characterized Payan's family as "people of some wealth" and "some power in the community." The court excluded the statement and gave a curative instruction to the jury, but refused to declare a mistrial.

The *Bruton* rule is not absolute. This aspect of the instant case is controlled by the Supreme Court's decision in *Richardson v. Marsh,*[41] a case cited by neither party on appeal. In *Richardson,* the Court noted that *Bruton* dealt with a nontestifying defendant's confession that facially[42] or expressly[43] implicated a codefendant. The court then declined to extend *Bruton* beyond instances involving facially incriminating confessions.[44] As the out-of-court statement by Ancira at most incriminated Payan by "contextual implication,"[45] no reversible error occurred when the trial court refused to declare a mistrial.

### C. *Sequestration of Witnesses*

At the beginning of trial, Payan moved to place all witnesses under "The Rule"—Rule 615 of the Federal Rules of Evidence. In response, the court sequestered all witnesses except for *two* case agents for the government—Texas Department of Public Safety Sergeant Johnson and FBI Agent Truehitt. Payan objected to those case agents not being sequestered but his objection was overruled. Both government case agents remained in court and subsequently testified over Payan's objection— Sergeant Johnson first, followed by Agent Truehitt. Sergeant Johnson was the witness who testified about Ancira's out-of-court statement about rich and powerful people. Payan makes no specific complaints on ap-

---

**36.** *Pereira v. United States,* 347 U.S. 1, 11–12, 74 S.Ct. 358, 364, 98 L.Ed. 435 (1954); *see* 18 U.S.C. § 371.

**37.** *Pereira,* 347 U.S. at 11–12, 74 S.Ct. at 364; *see* 18 U.S.C. §§ 2, 2314.

**38.** *See* 18 U.S.C. §§ 371, 2314.

**39.** 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

**40.** *Id.* at 137, 88 S.Ct. at 1628.

**41.** 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987).

**42.** *Id.* at 207, 107 S.Ct. at 1707.

**43.** *Id.* at 208, 107 S.Ct. at 1707.

**44.** *Id.* at 211, 107 S.Ct. at 1709.

**45.** *See id.* at 206, 107 S.Ct. at 1706.

peal about the substance of Agent Truehitt's testimony. Instead, he complains only that (1) it was error for the court to allow two case agents to remain and to testify, and (2) Sergeant Johnson's testimony as to Ancira's statement was a *Bruton* violation mandating a mistrial. Having already determined that no reversible error resulted from the court's evidentiary ruling on Sergeant Johnson's statement, we now turn to the remaining aspects of the witness sequestration issue.

Rule 615 provides for the exclusion of fact witnesses from a trial so that they cannot hear the testimony of other witnesses. The rule does not, however, authorize the exclusion of certain persons, including "an officer or employee of a party which is not a natural person designated as its representative by its attorney." [46] A police officer who has been in charge of an investigation generally comes within this exception.[47]

A more difficult question is whether Rule 615 authorizes more than one such officer or employee of a party to remain in the courtroom during the entire trial. In *United States v. Alvarado*,[48] we allowed two government agents to be excused from the effect of Rule 615, stating:

> The appellants have misconstrued the rule [Rule 615] by stating that it allows only one agent to be excused from its purview. We find that the decision as to how many will be excused from sequestration is just as discretionary with the trial judge was

who will be excused. Both decisions will be reversed only upon a clear showing of abuse of discretion.[49]

This holding may not be broad enough, however, to exempt more than one case agent solely because he is a representative of a party. The *Alvarado* court found adequate grounds under both the second and third exceptions to Rule 615 for allowing both government agents to remain in court during the trial.[50]

Other courts have held that a non-natural party may designate only one representative under Rule 615(2).[51] We have never directly decided the issue,[52] but we have held consistently that the district court's decision on the sequestration of witnesses is reviewed for abuse of discretion,[53] and that a violation of Rule 615 will only warrant reversal if the defendant can show that prejudice resulted.[54]

As Payan makes no credible showing that the district court abused its discretion in allowing the two government witnesses to remain present during the trial or that he was prejudiced by their doing so, his claim of reversible error fails. Payan alleges no substantive error in the testimony of Agent Truehitt—the second of the government's excepted witnesses to testify.[55] And, although Payan took issue under *Bruton* with some of Sergeant Johnson's testimony, we have already found that no reversible error resulted from that testimony. Consequently, no re-

---

**46.** Fed.R.Evid. 615. Three classes of persons are excepted from sequestration under Rule 615:

This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause. *Id.*

**47.** Fed.R.Evid. 615 advisory committee's note.

**48.** 647 F.2d 537 (5th Cir. Unit A 1981).

**49.** *Id.* at 540.

**50.** *Id.*

**51.** *See United States v. Pulley,* 922 F.2d 1283, 1284 (6th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 67, 116 L.Ed.2d 42 (1991).

**52.** *See United States v. Ramirez,* 963 F.2d 693, 703 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 388, 121 L.Ed.2d 296 (1992); *United States v. Causey,* 609 F.2d 777, 778 (5th Cir.1977).

**53.** *United States v. Samples,* 897 F.2d 193, 197 (5th Cir.1990); *Alvarado,* 647 F.2d at 540.

**54.** *Ramirez,* 963 F.2d at 704, *Causey,* 609 F.2d at 778.

**55.** We note an apparent inconsistency between the record and the characterization of that record in Payan's brief on appeal. The brief describes Sergeant Johnson's testimony in detail, then states: *"Earlier in the trial* the government's other excluded witness, F.B.I. Agent John Truehitt, testified concerning his duty as case agent and carrying out the investigation." (Emphasis added.) Contrary to this characterization, Sergeant Johnson testified immediately *before* Agent Truehitt. The court disapproves of this attempt

versible error resulted from the court's allowing both government witnesses to remain present during Payan's trial.

### D. *The Fine*

■ In addition to a term of incarceration of twenty-seven months, to be followed by three years of supervised release, Payan was also sentenced to pay a special assessment of $600, a fine of $5,000, and restitution of $84,857. Payan initially claims that the court erred in assessing substantial restitution because he has no present ability, and an uncertain future ability, to pay these sums.

■ The district court must consider, inter alia, "the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents" in determining whether to order restitution and the amount of any such restitution.[56] We review the district court's award of restitution only for abuse of discretion.[57]

Here, the district court expressly found that Payan had "sufficient assets with which to pay this fine" and "adequate means to pay the restitution." The record contains evidence sufficient to support these findings. The government presented evidence that between January, 1990 and May, 1991, Payan had written several six-figure checks and "a lot" of five-figure checks on his personal (not business) checking account. No one else was authorized to sign on that account. Payan himself testified that over a period of time he had paid Ancira approximately $200,000 for the stolen farm equipment and had subsequently resold it at a profit. He also testified that he controlled his family's several thousand acre ranch. The district court did not abuse its discretion in ordering restitution or in arriving at the amount ordered repaid.

■ Payan's second and more creative restitution argument implicates the issues of when he is to pay that restitution and what the potential effect of non-payment would be. The judgment recites that the special assessment and restitution were due immediately and that the fine was due not later than February 15, 1992. Payan's sentence was memorialized on a standardized government form entitled "Judgment in a Criminal Case."[58] The printed portion of this form addressing supervised release included the following standard language: "If this judgment imposes a restitution obligation, it shall be a condition of supervised release that the defendant pay any such restitution that remains unpaid at the commencement of the term of supervised release."

On appeal, Payan interprets the terms of this judgment as "condition[ing] his release to supervised release upon pre-payment of those amounts." According to Payan, if he does not pay these sums by the end of his twenty seven months of confinement, "he will either not be released or supervised release will be immediately revoked and he'll be sentenced to up to three [additional] years in the penitentiary."

Payan misapprehends the effect of an inmate's failure to pay restitution. Nothing in the district court's judgment can fairly be read to imply that Payan will not be released to supervised release at the end of his term of imprisonment even though he may not then have paid the full amount of restitution. On the contrary, the boilerplate language of the judgment form can only be read sensibly as making the payment of such restitution a resolutory condition or condition subsequent—not a suspensive condition or condition precedent—of supervised release. If Payan should fail to pay the restitution by the time of his supervised release, all that the government could do would be to seek to enforce that order of restitution.[59] More sig-

---

by Payan's counsel to misrepresent the record and cautions against such conduct in the future.

**56.** 18 U.S.C. § 3664.

**57.** *United States v. St. Gelais*, 952 F.2d 90, 97 (5th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 439, 121 L.Ed.2d 358 (1992).

**58.** U.S.GPO:1990–722–448/10286.

**59.** 18 U.S.C. § 3663 provides in part:
(h) An order of restitution may be enforced—
 (1) by the United States—
 (A) in the manner provided for the collection and payment of fines in subchapter B of chapter 229 of this title [18 U.S.C. §§ 3611 et seq.]; or
 (B) in the .same manner as a judgment in a civil action; and

nificantly, even if such future collection efforts by the government should prove fruitless, Payan's supervised release still would not be revoked *automatically*. Nevertheless, an examination of the controlling law and the enforcement mechanisms available to the government is appropriate to assuage Payan's fears fully.

### 1. Supreme Court Guidance

In *Bearden v. Georgia*,[60] the Supreme Court held that a defendant's probation could not automatically be revoked for failure to pay a fine or restitution even though his probation was conditioned on such payment.[61] Instead, the proper court must inquire into the reasons for the failure to pay. If the defendant is found to have willfully refused to pay the fine or restitution when he had the means to do so, or to have failed to make sufficient bona fide efforts to obtain employment or borrow money with which to pay the fine or restitution, the government is justified in using imprisonment as a sanction to enforce collection.[62] If, however, the defendant is found to have made all reasonable efforts to pay the fine or restitution but was still unable to do so through no fault of his own, the court must consider alternative means of punishment in lieu of more imprisonment.[63] Under such circumstances, imprisonment is acceptable only if alternative measures are not adequate to protect the government's interest in punishment and deterrence.[64] Nothing in the language of the *Bearden* opinion prevents its application to any given enforcement mechanism.

### 2. Revocation of Supervised Release

A term of supervised release may be revoked if, after the court considers the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), and (a)(6), it finds by a preponderance of the evidence that the person violated a condition of supervised release.[65] Such a determination must be made in accordance with the Federal Rules of Criminal Procedure that are applicable to revocation of probation and the provisions of the applicable policy statements issued by the United States Sentencing Commission.[66]

The Sentencing Commission promulgated its policy statements regarding violations of supervised released from an approach that considered a violation resulting from a defendant's failure to comply with court ordered conditions of supervised release as a "breach of trust."[67] Under this approach,

> [w]hile the nature of the conduct leading to the revocation would be considered in measuring the extent of the breach of trust, imposition of an appropriate punishment for any new criminal conduct would not be the primary goal of a revocation sentence. Instead the sentence imposed upon revocation would be intended to sanction the violator for failing to abide by the conditions of the court-ordered supervision,

(2) by a victim named in the order to receive the restitution, in the same manner as a judgment in a civil action.

**60.** 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983).

**61.** *Id.* at 661–62, 103 S.Ct. at 2066–67.

**62.** *Id.* at 668, 103 S.Ct. at 2070.

**63.** *Id.* at 668–69, 103 S.Ct. at 2070–71.

**64.** *Id.* at 672, 103 S.Ct. at 2072.

**65.** 18 U.S.C. § 3582. The relevant factors from § 3553 are: (1) The nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for the sentence imposed to afford adequate deterrence to criminal conduct; (3) the need for the sentence imposed to protect the public from further crimes of the defendant; (4) the need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the kinds of sentences and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the Sentencing Guidelines; (6) any pertinent policy statement issued by the Sentencing Commission that is in effect on the date that the defendant is sentenced; and (7) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553.

**66.** 18 U.S.C. § 3582.

**67.** United States Sentencing Commission, *Guidelines Manual*, Ch. 7, Pt. A, intro. comment.

leaving the punishment for any new criminal conduct to the court responsible for imposing the sentence for that offense.[68]

The policy statement specifically addressing revocation of supervised release provides that "the court *may* (A) revoke probation or supervised release; or (B) extend the term of probation or supervise release and/or modify the conditions of supervision" if the defendant commits a non-criminal violation of a condition of supervised release.[69] This permissive language stands in contrast to that of the preceding provision, which provides that: "Upon a finding of a Grade A or B violation [generally offenses punishable by imprisonment exceeding one year], the court *shall* revoke probation or supervised release." [70]

The application notes to this policy statement further demonstrate that the Sentencing Committee does not intend for supervised release to be revoked *automatically* upon failure to pay court ordered restitution:

Revocation of probation or supervised release generally is the appropriate disposition in the case of a Grade C violation [which includes non-criminal violations of conditions of supervision] by a defendant who, having been continued on supervision after a finding of violation, again violates the conditions of his supervision.[71]

We find nothing in the statutory or guidelines provisions dealing with revocation of supervised release to suggest that they may or would be applied in violation of *Bearden.*

3. Other Criminal Enforcement Mechanisms

Revocation of supervised release is not the only enforcement mechanism available to the government that could result in Payan's reincarceration for failure to make restitution. The government alternatively could attempt to enforce the order in the method provided for collection and payment of fines.[72] Under those provisions, the government could seek to have Payan resentenced for his failure to pay the restitution,[73] or could proceed under the criminal default statute.[74]

18 U.S.C. § 3614 (Resentencing Upon Failure to Pay a Fine) appears in large part to codify *Bearden.* It provides:

(a) Resentencing. Subject to the provisions of subsection (b), if a defendant *knowingly* fails to pay a delinquent fine the court may resentence the defendant to any sentence which might originally have been imposed.

(b) Imprisonment. The defendant may be sentenced to a term of imprisonment under subsection (a) only if the court determines that—

(1) the defendant willfully refused to pay the delinquent fine or had failed to make sufficient bona fide efforts to pay the fine; or

(2) in light of the nature of the offense and the characteristics of the person, alternatives to imprisonment are not adequate to serve the purposes of punishment and deterrence.[75]

Similarly, 18 U.S.C. § 3615 (Criminal Default) requires that the failure to pay the fine be willful before an additional sentence can be imposed on the defendant:

Whoever, having been sentenced to pay a fine, *willfully* fails to pay the fine, shall be fined not more than twice the amount of the unpaid balance of the fine or $10,000, whichever is greater, imprisoned not more than one year, or both.[76]

Clearly, neither of these provisions sanctions the automatic reincarceration of a defendant on failure to pay court ordered restitution.

Payan has presented no viable argument that he will be held in prison indefinitely until he pays the full amount of restitution or that his supervised release will automatically be revoked if he has not made restitution by

---

68. *Id.*

69. U.S.S.G. § 7B1.3(a)(2) (emphasis added); *see* U.S.S.G. § 7B1.1.

70. U.S.S.G. § 7B1.3(a)(1) (emphasis added); *see* U.S.S.G. § 7B1.1.

71. U.S.S.G. § 7B1.3, comment. (n. 1).

72. 18 U.S.C. § 3663.

73. 18 U.S.C. § 3614.

74. 18 U.S.C. § 3615.

75. 18 U.S.C. § 3614 (emphasis added).

76. 18 U.S.C. § 3615 (emphasis added).

the end of his term of incarceration. On the other hand, Payan has good reason to be concerned about how long he will remain free on supervised release if he volitionally refuses to make restitution (or at least bona fide efforts to do so) prior to completion of his prison term. Apparently, the government could start proceedings immediately to enforce the order of restitution, and those proceedings could eventually result in Payan's return to prison. An order of restitution, after all, would be meaningless if no mechanism existed for its enforcement. We have no reason to believe that, if institution of one or more of those mechanisms becomes necessary in the instant case, they will not be applied in a lawful manner. But if they are not, Payan will be free to seek review in the courts.

## III

## CONCLUSION

We find that neither the Wharton Rule nor the Double Jeopardy Clause were violated by Payan's conviction for both conspiracy to transport stolen property the underlying substantive offenses. We also find that the trial court committed no reversible error (1) in refusing to grant a mistrial after the government's witness referred to an out-of-court statement by Payan's non-testifying codefendant, or (2) by allowing two government witnesses to remain in the courtroom unsequestered for the duration of the trial. Neither did the district court abuse its discretion in ordering Payan to make restitution or in the amount of the restitution thus ordered. Finally, we find that the district court did not improperly condition Payan's release to supervised release on his payment of the special assessment, fine, or restitution. For the foregoing reasons, the convictions and sentence of Pedro Carrillo Payan are AFFIRMED.