## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 27, 2011

No. 10-40686

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

ROYCE DEMOND RICE

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:09-CR-107

Before KING, WIENER, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Royce Demond Rice was convicted of possession with intent to distribute 20 grams or more of a mixture or substance containing a detectable amount of cocaine base in violation of 21 U.S.C. § 841(a)(1) and of conspiracy to possess with intent to distribute 150 grams or more of a mixture or substance containing a detectable amount of cocaine base in violation of 21 U.S.C. § 846. The district court sentenced him to life imprisonment. He timely appeals his conspiracy conviction and his sentence. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-40686

## FACTS AND PROCEEDINGS

Rice was charged in a superseding indictment with (1) possession with intent to distribute 20 grams or more of a mixture or substance containing a detectable amount of cocaine base in violation of 21 U.S.C. § 841(a)(1) and (2) conspiracy to possess with intent to distribute 150 grams or more of a mixture or substance containing a detectable amount of cocaine base, a violation of 21 U.S.C. § 841(a)(1), in violation of 21 U.S.C. § 846. The charges were a result of a joint investigation by Lewisville, Texas police and the Drug Enforcement Agency ("DEA") into drug dealing near the intersection of Pernell and Hardy streets in Lewisville. The investigation targeted Rice, Damian Chambers, Kyle Brown, and Viron Ellison. Chambers, Brown, and Ellison are cousins, and Chambers's grandmother lived at the corner of Pernell and Hardy streets. Brown's grandmother lived next door to Chambers's grandmother. Rice, who is not related to Chambers, Brown, or Ellison, also lived near the intersection of Pernell and Hardy streets.

On June 11, 2009, Rice was indicted for possession with intent to distribute 20 grams or more of cocaine base. He was arrested on June 25, and on August 13, the grand jury returned a superseding indictment adding a charge for conspiracy to possess with intent to distribute 150 grams or more of cocaine base. With respect to the conspiracy count, the superseding indictment charged that Rice conspired with Chambers, Brown, Ellison, and "other persons known and unknown . . . to knowingly and intentionally possess with the intent to distribute 150 grams or more of a mixture or substance containing a detectable amount of cocaine base." Chambers, Brown, and Ellison pleaded guilty, but Rice proceeded to trial. A jury found Rice guilty on both counts charged in the superseding indictment.

Prior to trial, the government filed an information pursuant to 21 U.S.C. § 851, informing the district court that it would seek a sentencing enhancement

2

No. 10-40686

under 21 U.S.C. § 841(b)(1)(A) based on Rice's three prior felony convictions. After the verdict, it moved for the sentencing enhancement. The district court applied the enhancement and sentenced Rice to life imprisonment.

Rice timely appeals, raising four arguments: (1) the evidence was insufficient to show that he conspired to distribute more than 150 grams of cocaine base; (2) the court plainly erred in failing to find a variance between the conspiracy charged in the indictment and the proof of that conspiracy presented at trial; (3) the district court abused its discretion in sentencing Rice to a term of life imprisonment; and (4) a Speedy Trial Act violation requires reversal.

**DISCUSSION**

I. Sufficiency of the Evidence

Rice contends that the evidence was insufficient to show that he conspired to possess with intent to distribute more than 150 grams of cocaine base.

A. Standard of Review

Because Rice properly preserved his sufficiency of the evidence argument, this court's review is *de novo. See United States v. Shum*, 496 F.3d 390, 391 (5th Cir. 2007). "In deciding whether the evidence was sufficient, [the court] review[s] all evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt." *Id.* (citations omitted).

B. Evidence of a Conspiracy

To prove a conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 841(b)(1)(A), the government must show: (1) the existence of an agreement between two or more persons to possess with intent to distribute fifty grams or more of cocaine base, (2) that Rice knew of the conspiracy and intended to join it, and (3) that he participated in the conspiracy. *United States v. Mitchell,* 484 F.3d 762, 768 (5th Cir. 2007). "Direct evidence of a conspiracy is unnecessary; each element may be inferred from circumstantial

evidence" and an "agreement may be inferred from a concert of action." *Id.* at 768-69 (quotation marks omitted). "Although mere presence at the scene of the crime or a close association with a co-conspirator alone cannot establish voluntary participation in a conspiracy, presence or association is a factor that, along with other evidence, may be relied upon to find conspiratorial activity by the defendant." *United States v. Cardenas,* 9 F.3d 1139, 1157 (5th Cir. 1993) (internal citations omitted).

According to Rice, the government failed to show that he conspired with Chambers, Brown, and Ellison. We conclude that the government presented sufficient evidence to demonstrate that Rice conspired with his co-defendants.[1] Brown testified that all four co-defendants shared a common supplier, and that Brown accompanied Rice on trips to Dallas five to ten times per year to purchase drugs. Courts have found that, *inter alia*, the fact that two drug dealers had a common supplier and traveled together to purchase from that common supplier indicates a conspiracy. *See United States v. Asibor*, 109 F.3d 1023, 1036 (5th Cir. 1997) (finding relevant that "all of the co-conspirators involved in the distribution of the drug utilized a common supplier"); *see also United States v. Fox*, 902 F.2d 1508, 1514-16 (10th Cir. 1990) (holding the government established a conspiracy where, *inter alia*, the defendant traveled with a co-conspirator to purchase cocaine from their common supplier).

The four co-defendants often supplied the same customers. A confidential informant testified that if Rice did not have cocaine base to sell, he directed customers to Chambers. Ellison also testified that he and Rice supplied the same customers and that if he did not have any cocaine base, then the customer would go to a different dealer, including Rice. This indicates that the four co-defendants

---

[1] The government also argued that Rice conspired with "a number of his suppliers on Life Street and other locations within Dallas." The panel need not decide whether Rice conspired with his Dallas suppliers because the evidence is sufficient to establish a conspiracy among Rice, Brown, Chambers, and Ellison.

No. 10-40686

cooperated rather than competed. *See United States v. Brown*, 217 F.3d 247, 255 (5th Cir. 2000) (holding that the defendants were members of a conspiracy where they "refer[ed] customers to each other when unable to supply customers themselves"), vacated and remanded on other grounds *sub nom*, *Randle v. United States*, 531 U.S. 1136 (2001); *United States v. James*, 540 F.3d 702, 707 (7th Cir. 2008) (finding a conspiracy where, among other things, the defendant and his co-conspirators "would refer customers to other members' drug houses if his or her supply of crack was low").

Last, the government introduced evidence that Rice occasionally sold drugs at Chambers's grandmother's house—the same location where Chambers, Brown, and Ellison dealt drugs—and that Chambers occasionally sold drugs from Rice's house. This evidence also indicates that the co-defendants cooperated to sell drugs.

The foregoing evidence, considered as a whole and in the light most favorable to the verdict, is sufficient to sustain the jury's verdict. The government presented evidence showing that Rice, Chambers, Ellison, and Brown cooperated to purchase drugs and to sell them near the intersection of Pernell and Hardy streets. They often acted together: traveling to purchase drugs from a common supplier, referring customers to one another, and permitting their co-conspirators to sell drugs at their houses. This evidence of "a concert of action" permitted the jury to infer that Rice conspired with Chambers, Ellison, and Brown. *See Mitchell*, 484 F.3d at 769 (quotation marks omitted).

Rice also argues that the evidence at trial was insufficient to show that he participated in a conspiracy to possess with intent to distribute 150 grams or more of cocaine base. Ellison and Chambers both testified that Rice sold approximately one ounce (approximately 28 grams) of cocaine base per week. Rice admits that he was not incarcerated—and dealing drugs—for

5

No. 10-40686

approximately 91 weeks during the period charged in the indictment. Therefore, the total amount that he possessed with intent to distribute was approximately 2,548 grams of cocaine base. Rice's sales alone permitted the jury to find him responsible for 150 grams of cocaine base.

## II. Variance

Rice alleges that because the court permitted the government to introduce evidence of events occurring before the period charged in the indictment, there was a variance between the conspiracy charged in the indictment and the proof of that conspiracy presented at trial. He argues that this variance enabled the jury to convict him of a crime that occurred outside the period charged in the indictment, which was also a double jeopardy violation.

### A. Standard of Review

As Rice did not raise this argument below, the court reviews it for plain error. *United States v. John*, 597 F.3d 263, 284 n.91 (5th Cir. 2010) Plain error review has four prongs: (1) there was an error; (2) the error is clear or obvious; (3) the error affected the defendant's substantial rights; and (4) a court may exercise its discretion to correct the error "only if the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotation omitted)(alteration in original) (citation omitted).

### B. Discussion

To prevail on a material variance claim, Rice must prove (1) a variance between the indictment and the proof at trial, and (2) that the variance affected his substantial rights. *United States v. Morris*, 46 F.3d 410, 414 (5th Cir. 1995). A variance is fatal where the defendant "was taken by surprise by reason of the variance and . . . such surprise prejudiced the preparation of his defense." *United States v. Linn*, 889 F.2d 1369, 1373 (5th Cir. 1989) (citation omitted). Additionally, a variance is fatal "if it prejudices the defendant's 'substantial

No. 10-40686

rights,' . . . by placing the defendant at risk of double jeopardy." *United States v. Robinson*, 974 F.2d 575, 578 (5th Cir. 1992) (citations omitted).

Rice alleges that the facts at trial deviated from the facts contained in the indictment because the dates for the government's proof fell before January 2006, the earliest date in the indictment. According to Rice, this variance undermined his ability to present a defense as he had no notice that "he was defending against a drug conspiracy more than twice as long and involving ten times the amount of drugs as alleged in the indictment."

Even assuming that the district court plainly erred in allowing the government to present evidence of events prior to January 2006, this error did not affect Rice's substantial rights. As discussed above, the government introduced evidence sufficient to show that Rice participated in a conspiracy to possess with intent to distribute over 150 grams of cocaine base between January 2006 and August 2009. The evidence at trial established that the indicted offense occurred during the period stated in the indictment, distinguishing this case from others where the charged offenses occurred well outside the time provided for in the indictment. *See United States v. Ross*, 412 F.3d 771, 774–75 (7th Cir. 2005) (finding a fatal variance where the jury could have convicted the defendant for committing the offense four years prior to the date charged in the indictment); *United States v. Tsinhnahijinnie*, 112 F.3d 988, 991–92 (9th Cir. 1997) (finding fatal variance where evidence at trial showed that the offense had occurred 22 months after the date charged in the indictment).

In addition, Rice alleges that the variance placed him at risk of double jeopardy by exposing him to a "second prosecution" for his three prior state convictions for possession of cocaine. On appeal, he challenges only his conviction for conspiracy to possess with intent to distribute cocaine base. The double jeopardy clause "protects against successive prosecutions of the same offense."

7

No. 10-40686

*United States v. Payan*, 992 F.2d 1387, 1392 n.31 (5th Cir. 1993) (citation omitted). Two offenses are the not same so long as "each provision requires proof of an additional fact which the other does not." *Id.* at 1392. Because Rice's prior convictions were for possession and he challenges only his conspiracy conviction, he has not shown that the alleged variance put him at risk of double jeopardy. *See United States v. Casiano*, 929 F.2d 1046, 1051 (5th Cir. 1991) ("It is beyond dispute . . . that conspiracy and the substantive offense that is the object of the conspiracy are separate and distinct crimes.").

Moreover, any prejudice to Rice caused by the alleged variance was alleviated by the court's instruction to the jury that it was required to find "beyond a reasonable doubt that the defendant committed the crimes on dates reasonably near the dates stated in the superseding indictment" and that the defendant was "not on trial for any act, conduct, or offense not alleged in the superseding indictment." *See Mitchell*, 484 F.3d at 772; *see also United States v. Paredes-Rodriguez*, 160 F.3d 49, 56 (1st Cir. 1998).

III. Life Sentence

Rice asserts that the district court abused its discretion in sentencing him to life imprisonment. But because Rice had at least two prior felony drug convictions, and the government filed notice that it intended to seek an enhancement pursuant to 21 U.S.C. § 851(a)(1), he was subject, by statute, to the mandatory minimum penalty of life in prison. 21 U.S.C. §§ 841(b)(1)(A), 851. With two exceptions not applicable here, a district court has no discretion to impose a guidelines sentence lower than the statutorily-mandated minimum penalty. *See United States v. Harper*, 527 F.3d 396, 411 (5th Cir. 2008); *United States v. Gomez-Herrera*, 523 F.3d 554, 559 (5th Cir. 2008). The court did not abuse its discretion by imposing a life sentence.

IV. Speedy Trial Act

No. 10-40686

Rice contends that his conviction should be reversed because he was not charged with the conspiracy count within thirty days after his arrest. The Speedy Trial Act provides, as relevant here, that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). Should the government fail to file an indictment or information within thirty days after the defendant's arrest, "such charge against that individual contained in such complaint shall be dismissed or otherwise dropped." *Id.* at § 3162(a)(1).

Because Rice failed to raise the issue below,[2] this court reviews it for plain error. *John*, 597 F.3d at 284 n.91. According to Rice, under the Speedy Trial Act, the clock on his superseding indictment commenced running on June 25, 2009, the date on which Rice was arrested for the possession count charged in the original indictment. Rice's superseding indictment, adding the conspiracy count, was not filed until 59 days later, on August 13, 2009. According to Rice, the clock was tolled for only four days due to the government's motion for detention. Rice argues that the court must vacate his conspiracy conviction because he was not charged with the conspiracy count until well after the thirty-day limit set forth in § 3161(b).

Contrary to Rice's assertion, "the government's failure to indict a defendant within thirty days of his arrest on one charge does not start the speedy trial clock as to other charges subsequently filed. [T]he clear mandate of § 3162(a)(1) requires dismissal of only those charges contained in the original complaint or other original accusatory instrument." *United States v. Bailey*, 111 F.3d 1229, 1237 (5th Cir. 1997) (internal citations and quotations omitted)

---

[2] The government argues that Rice waived his Speedy Trial Act argument by failing to file a motion to dismiss the indictment prior to trial. *See, e.g., United States v. Spagnuolo*, 469 F.3d 39, 44 (1st Cir. 2006). We need not decide whether Rice has waived this objection because the challenge fails on the merits.

(alteration in original). Rice's conspiracy charge is a "separate and distinct" charge from the possession charge. *Casiano*, 929 F.2d at 1051 (citations omitted). Therefore, that "more than thirty days elapsed between [Rice's] arrest on the [possession charge] and his indictment on the [conspiracy charge] does not implicate the dismissal sanction under § 3162(a)(1)." *Bailey*, 111 F.3d at 1236; s*ee also United States v. Phipps*, 319 F.3d 177, 181–82 (5th Cir. 2003) (denying Speedy Trial Act claim where the offenses charged in the superseding indictment, filed over thirty days after the defendant was arrested, were different from the charges in the original indictment).

## CONCLUSION

For the reasons stated above, we AFFIRM Rice's conviction and sentence.