**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 98-60775

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

RONALD BRUCE MYERS, also known as Richard Davis Parker,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Mississippi

_____

December 9, 1999

Before KING, Chief Judge, REYNALDO G. GARZA and EMILIO M. GARZA, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

Ronald Bruce Myers challenges the sentence he received pursuant to his conviction for theft of a recreational vehicle and possession of stolen state securities. For the reasons that follow, we AFFIRM in part, VACATE in part, and REMAND for further consideration consistent with this opinion.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In April, 1998 Ronald Myers stole a recreational vehicle (RV) from a dealer's lot in Pensacola, Florida. Shortly thereafter, Myers met up with codefendant Gary Figueroa. Myers and Figueroa decided to commit a burglary and drove the stolen RV to Olive Branch, Mississippi, for that purpose. After the two men selected a particular RV lot, Figueroa remained in the stolen RV as a lookout, while Myers burglarized one of the RV's on the lot. Myers was arrested at that time. Figueroa was arrested the following day in Batesville, Mississippi, driving the stolen RV. Inside the stolen RV, officers found blank identification documents; counterfeit identification documents; 347 blank, authentic State of Virginia vehicle titles; and various document-making

devices.

A grand jury in the Northern District of Mississippi subsequently returned a five-count indictment against Myers and Figueroa. Count One of the indictment charged Myers and Figueroa with conspiracy to transport stolen motor vehicles that had been transported across state lines, to possess stolen motor vehicles that had been transported across state lines, to make and possess forged state securities, to produce false identification documents in and affecting interstate commerce, and to possess implements for making forged state securities and false identification documents. The remaining four counts charged some of the substantive counts associated with the conspiracy. Myers pleaded guilty to the conspiracy count pursuant to a written plea agreement with the Government in exchange for the dismissal of the remaining counts. The district court sentenced Myers to 44 months imprisonment, three years' supervised release, restitution in the amount of $40,256.02, and a special assessment of $100. Myers timely filed a notice of appeal.

## II.    DISCUSSION

Myers alleges four bases of error: (1) that the district court erred in imposing a four level enhancement under the United States Sentencing Guidelines; (2) that the district court erred when it used the value of the stolen recreational vehicle as the amount of loss under both the theft guideline and the fraud guideline in calculating Myers' sentence; (3) that Myers' was sentenced in violation of Fed.R.Crim.P. 32; and (4) that the district court plainly erred in failing to make adequate findings regarding Myers' ability to pay restitution and in ordering him to pay restitution immediately. For the reasons that follow, we affirm the district court on all grounds except the immediate payment of restitution, which we remand for further proceedings to consider his ability to pay immediately.

### 1.    The Four Level Sentencing Enhancement.

Myers contends that the district court misapplied the United States Sentencing Guidelines

(Guidelines) when it enhanced his offense level under U.S.S.G. § 2B1.1(b)(4)(B).[1]  That section

authorizes a four-level enhancement "[i]f the offense involved receiving stolen property, and the

defendant was a person in the business of receiving and selling stolen property." *Id.*  This court

reviews a district court's findings of fact under a clearly erroneous standard and its application of

the Guidelines to those findings *de novo.  See United States v. Brown*, 7 F.3d 1155, 1159 (5th

Cir. 1993).  A factual finding is not clearly erroneous as long as it is plausible in light of the record

as a whole.  *Id.*

An enhancement under § 2B1.1(b)(4)(B) is intended as a "punishment for fences, people

who buy and sell stolen goods, thereby encouraging others to steal, *as opposed to thieves who

merely sell the goods which they have stolen.*"  *United States v. Sutton,* 77. F.3d 91, 94 (5th Cir.

1994) (emphasis added).  *See also united States v. Mackay*, 33 F.3d 489, 497 (5th Cir. 1994)

(upholding enhancement under former § 2B1.2(b)(4)(A) because there was sufficient evidence to

support the district court's finding that the defendant bought stolen item from another person,

even though there was evidence which contradicted that finding); *United States v. Esquivel,* 919

F.2d 957, 960 (5th Cir. 1990) ("it is because *someone else* stole the shoes sold by Esquivel that . .

. the fencing operation falls within the intended purview of the background to and text of former

section 2B1.2(b)(3)(A).").

We note that Myers alleges that the district court erred in considering his theft of motor

homes, which he later sold, in his four-level sentence enhancement under § 2B1.1(b)(4)(B).  Such

conduct would not be a proper basis for a sentencing enhancement under that section as

interpreted by *Sutton*, 77 F.3d at 94 (noting that § 2B1.1(b)(4)(B) is not intended to punish

---

[1] Myer's sentencing took place on November 12, 1998.  At that time, the November, 1998 edition of the sentencing guidelines was in effect.  The Presentence Report (PSR) used the 1997 version of the guidelines to calculate Myer's sentence.  This was error.  *See* 18 U.S.C. § 3553(a)(4)(A); *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) (holding that version of the guidelines effective on the date of the sentencing must be used.)  Myers did not object and does not raise the issue on appeal.  The 1997 and 1998 versions of the guidelines are identical with respect to the sections used to calculate Myers' sentence.

thieves who merely sell the goods which they have stolen). Myers also alleges the district court erred in relying on his admission that he had previously created counterfeit titles for people who had stolen motor homes. Such conduct was the basis of a prior conviction for which Myers had already been sentenced. Thus such conduct, *on its own*, would not be a proper basis for a sentencing enhancement under § 2B1.1(b)(4)(B). However, these alleged errors are without consequence because, as noted below, there is sufficient evidence on the record on which to conclude that the § 2B1.1(b)(4(B) sentencing enhancement should apply.

Three hundred forty-seven blank, authentic State of Virginia vehicle titles were found in the stolen RV at the time of Figueroa's arrest. According to the Presentence Report (PSR), the vehicle titles were stolen from the Virginia Department of Motor Vehicles. Although it is not entirely clear from the PSR who actually stole the vehicle titles, it appears as if an employee of the Virginia Department of Motor Vehicles gave them to Figueroa in exchange for drugs. Myers pleaded guilty to, among other things, conspiracy to making, uttering, and possessing forged state securities. Thus, if Myers and Figueroa received the stolen Virginia vehicle titles from a third person, as the PSR suggests, then Myers' offense would involve "receiving stolen property." *See Sutton,* 77 F.3d at 94 (noting that we have repeatedly stated that a person can receive the "in the business" enhancement when the only goods he has fenced are those for which he is convicted) (citations omitted). Moreover, Myers' admission at sentencing that he previously sold counterfeit titles to people who had stolen motor homes supports a finding that he intended to sell the Virginia vehicle titles and, consequently was "in the business of receiving and selling stolen property." Accordingly, it was not clearly erroneous for the district court to conclude that Myers received stolen property and was in the business of selling stolen property. Nor can there be any doubt that the theft and sale of vehicle titles encourages the theft of vehicles. Thus we affirm the four-level sentencing enhancement on that basis.

### 2. Amount of Loss

Next, Myers contends that the district court misapplied the guidelines when it used the

value of the stolen RV as the amount of "loss" under both the theft guideline (§ 2B1.1) and the fraud guideline (§ 2F1.1) in calculating his sentence. Because Meyer's contention involves the district court's application of the guidelines, it is subject to *de novo* review. *See Brown,* 7 F.3d at 1159.

Myers pleaded guilty to a multiple count conspiracy. In the PSR, the probation officer noted that Myer's conspiracy conviction included offenses under U.S.C. § 513 (possessing forged state securities and implements for making forged state securities); 18 U.S.C. § 1028 (producing false identification documents and possessing implements for making false identification documents); 18 U.S.C. § 2312 (transporting a stolen motor vehicle across state lines); and 18 U.S.C. § 2313 (possessing a stolen motor vehicle that had been transported across state lines). The probation officer calculated the offense levels for the § 513 and § 1028 offenses under the fraud guideline (§ 2F1.1) and the offense levels for the § 2312 and § 2313 offense levels under the theft guideline (§ 2B1.1). Myers' base offense level under the theft guideline was increased by nine levels because the loss (the value of the stolen RV, which was $156,405) exceeded $120,000. Myers' based offense level under the fraud guideline was increased by seven levels based on the same loss amount. After further adjustments were made, Myers' total offense level under the theft guideline was 14, and his total offense level under the fraud guideline was 13. Because the offenses were grouped under § 3D1.2(d), the highest offense level, i.e. the offense level of 14 from the theft guideline, was used in calculating Myers' guideline range.

Myers objected prior to and at sentencing, contending that the stolen motor home had nothing to do with the offenses calculated under the fraud guideline. Consequently, he maintained that the value of the stolen RV should not have been used as the loss amount under that guideline. The district court overruled Meyer's objection, stating that the value of the stolen RV could be considered under the fraud guidelines because it was relevant conduct. Myers acknowledges that the grouping of his offenses was appropriate.

Myers contention is without merit. First, because his offenses were grouped, only the

**5**

higher theft offense level from the theft guidelines was used in calculating Myers' sentence, and therefore the offense level was not increased by twice the value of the motor home. Thus any error in calculating the offense level under the fraud guideline had no effect on his sentencing and the calculation of his offense level and sentence must be affirmed.

In fact, no error was made. Since Myers pleaded guilty to a multiple-object conspiracy, the probation officer correctly looked to the guidelines for the substantive offenses. *See* § 1B1.2(d) (a conviction on a count charging a multiple-object conspiracy is treated as if the defendant has been convicted on a separate count of conspiracy for each substantive offense); § 2X1.1(a) (the base offense level for a conspiracy offense is the base offense level for the substantive offense). Moreover, because the substantive offenses fell under both the theft guidelines and the fraud guideline, they were properly grouped under § 3D1.2(d), which states that offenses covered by the theft guideline, § 2B1.1, and the fraud guideline, § 2F1.1, are to be grouped under that subsection. Since the substantive offenses were grouped under § 3D1.2(d), the offense level for the group was governed by § 3D1.3(b), which states that the offense guideline producing the highest offense level applies. *See* 3D1.3(b). Indeed, the commentary to § 3D1.3(b) further provides :

> If the counts in the Group are covered by different guidelines (e.g., theft and fraud) use the guideline that produces the highest offense level. Determine whether the specific offense characteristics . . . apply based upon the combined offense behavior taken as a whole.

§ 3D1.3(b), comment.n.3.

The amount of loss is a specific offense characteristic under the fraud guideline. *See* § 2F1.1(b)(1). Thus, the district court did not err in using the value of the stolen RV as the amount of loss under the fraud guideline because the stolen RV was part of "the combined offense behavior taken as a whole." *See* 3D1.3(b), comment.n.3; *see also* § 1B1.3(a)(2) (stating that specific offense characteristics with respect to offenses grouped under § 3D1.2(d) shall be determined on the basis of all relevant conduct which was "part of the same course of conduct or common scheme or plan as the offense or conviction"). For the reasons laid out above, we affirm

the district court's calculation of Myers' offense level and sentence.

### 3. Fed.R.Crim.P. 32

Next, Myers contends that he was sentenced in violation of Fed.R.Crim.P 32. First, he argues that the probation officer failed to file an addendum to the PSR at least seven days prior to his sentencing hearing, as required by Fed.R.Crim.P. 32(b)(6)(c).

Myers did not raise this procedural objection prior to or at sentencing. Accordingly, he is limited to plain error review on appeal. *See United States v. Navejar*, 963 F.2d 732, 734 (5th Cir. 1992). This court will reverse the district court only if a clear or obvious error was made which affects Myers' substantial rights. *United States v. Olano*, 507 U.S. 725, 732 (1993); *United States v. Dupre*, 117 F.3d 810, 817 (5th Cir. 1997) (citations omitted). Moreover, this court will not correct the error unless it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732 (internal quotations and citations omitted).

The probation officer did file an addendum in this case. According to that addendum, both the Government and the defense counsel informed the probation officer that there were no objections to the PSR. Moreover, the addendum appears to have been prepared in September, 1998, which was much more than seven days prior to Myers' sentencing hearing of November 12, 1998. Although Myers sent *pro se* objections to the probation officer, those objections were received in the probation office after the deadline for objections had passed. According to the addendum, objections were due on September 17, 1998. Myers first set of *pro se* objections were dated September 17, 1998 and received in the probation office on September 21, 1998. His second set of *pro se* objections were dated September 25, 1998 and received after that time.

Myers states that even if the probation officer filed an addendum, he never received a copy of it. He further states that the only way his *pro se* objections were filed after the deadline is if the probation officer filed an addendum before the 14 day period for filing objections under Rule 32(b)(6)(B) had expired.

However, even assuming Myers' allegations are true, he still cannot show plain error

because the district court entertained Myers' objections to the PSR at his sentencing hearing. Myers makes the vague allegation that he was denied "the opportunity to properly prepare for the sentencing hearing," but does not allege how his preparation would have been any different if he had been furnished with a copy of the addendum. Therefore, Myers has not shown that the error was prejudicial or that it affected the outcome of his sentencing hearing as required to establish that the error affected his "substantial rights." *See Dupree*, 117 F.3d at 817. Thus, this court rejects Myers' argument that he was sentenced in violation of Fed.R.Crim.P. 32 due to failure to file an addendum to the PSR.

Myers also argues that the district court erred in overruling his objections to factual inaccuracies in the PSR without inquiring into the reliability of the PSR. He maintains that he denied the statement in the PSR that he stole 100 motor homes and that the district court violated Rule 32 when it failed to resolve the disputed issue or state that the disputed issue would not be taken into account. He further maintains that the Government failed to prove the truthfulness of the information in the PSR after he objected to factual inaccuracies in the PSR.

Rule 32 requires a district court to resolve any controverted factual matter at sentencing by making "either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing." Fed.R.Crim.P.32(c)(1). A factual matter becomes controverted so as to implicate the requirements of rule 32 only when there is an "unresolved objection" to it. *United States v. Ruiz*, 43 F.3d 985, 991 (5th Cir. 1995); *United States v. Esquenda-Moreno*, 56 F.3d 578, 581 (5th Cir. 1995).

At sentencing, Myers stated that he wanted to "drop" all of his objections to the PSR except for his objection to the four-level enhancement under § 2B1.1(b)(4)(B) and his objection to the loss calculation. While making his objection to the four-level enhancement at his sentencing hearing, Myers stated that he was not in the business of buying and selling cars. The district court then questioned him about the PSR's statement that he had stolen 100 motor homes.

**8**

Although Myers denied stealing 100 motor homes, he stated that it was irrelevant to his argument because the enhancement under § 2B1.1 applies only to people who buy and sell stolen property as opposed to thieves who merely sell the property which they have stolen.

Thus, Myers has not shown that the district court was required to make a specific finding about whether he in fact stole 100 motor homes. Though he initially objected to the PSR's statement to that effect, he abandoned that objection at his sentencing hearing. Since the objection was removed, the factual matter was no longer in controversy and the district court was not required to make a specific finding as to whether Myers stole 100 motor homes. *See Esquenda-Moreno*, 56 F.3d at 581. Since Myers withdrew his objection to that matter, the district court was free to adopt the factual statement in the PSR without further inquiry. *See United States v. Mir,* 919 F.2d 943 (5th Cir. 1990).

Finally, Myers argues that the district court violated Rule 32(c)(1) when it failed to include his list of objections and its findings on those objections in its written report appended to the PSR. Although Myers acknowledges that the district court appended a written report to the PSR, he states that the report mistakenly indicated that he had not filed any objections to the PSR.

Rule 32(c)(1) states that a written record of the district court's findings and determinations regarding the parties' objections to the PSR "must be appended to any copy of the presentence report made available to the Bureau of Prisons." It is noted that this court has remanded a pre-guidelines case after finding such a violation. *See United States v. Castillo-Roman*, 774 F.2d 1280, 1284-85 (5th Cir. 1985 (after finding a "technical" violation of the same requirement under former Rule 32(c)(3)(D), remanding the case for the "sole purpose of allowing the district court to append to the PSI its findings and determinations regarding the disputed material," but declining to remand the case for resentencing ). Moreover, this court has required resentencing only where the district court has altogether refused to respond to the defendant's objections to the PSR. *See United States v. Valesquez*, 748 F.2d 972 (5th Cir. 1984).

A remand would not be appropriate in this case, however. Myers admits that the district

court appended a written report to the copy of the PSR sent to the Bureau of Prisons. He states that the district court failed to include Myers' objections to the PSR and the courts' findings regarding those objections. However, the court's written report is not in the record. "It is well settled, of course, that the appellant bears the burden of creating the record on appeal." *United States v. Coveney*, 995 F.2d 578, 587 (5th Cir. 1993) (citing Fed.R.App.P. 11(a)). When the record does not establish a basis for reversal, this court will affirm. *Id.* Myers, as the appellant, had the burden of ensuring that the district court's written report was included in the record or record excerpts. *See Id.* Without that report in the record there is no basis on which to find that the report violated Rule 32. Thus there is no basis for reversal or remand.

Perhaps Myers, in referring to the district court's written report, meant to refer to the addendum to the PSR which stated that the parties had no objection. Even so, Myers has still shown no resulting prejudice. He claims that the Parole Board and the Bureau of Prisons will infer that he acquiesced to the allegations that he stole and sold over 100 motor homes. However, Myers failed to put that matter into controversy when he abandoned his objection to that matter at sentencing. Myers cannot now claim that prejudice arose from a matter he choose not to put into controversy. Therefore, he is not entitled to any relief on this claim. *See United States v. Puma*, 937 F.2d 151, 155-56 (5th Cir. 1991) (rejecting defendant's argument that the district court's failure to append written record of findings to PSR was reversible error where the record revealed no prejudice from the district court's omission).

### 4. Ability to Pay Restitution

Myers' last argument is that the district court erred in failing to make specific findings regarding his ability to pay the $40, 256.02 in restitution that it imposed. Myers really makes two claims, arguing that the district court erred in (1) ordering restitution without inquiring into Myers' ability to pay; and (2) ordering that Myers pay restitution *immediately* without inquiring into his ability to pay immediately. A restitution order is ordinarily reviewed for abuse of discretion. *United States v. Greer*, 137 F.3d 247, 252 (5th Cir.), *cert. denied*, 118 S.Ct. 2305

(1998). Myers, however, is limited to plain-error review on appeal because he failed to raise the issue in the district court. *Id.*

The district court did not err in requiring restitution without inquiring into Meyer's financial circumstances. The Mandatory Victims Restitution Act (MVRA) provides that restitution is mandatory when certain offenses are involved, included offenses against property such as Myers', under Title 18 of the United States Code. *See* 18 U.S.C. §§ 3663(A)(a)(1), (c)(1)(A)(ii). The MVRA, which was created as part of the Antiterrorism and Effective Death Penalty Act, is "effective, to the extend constitutionally permissible, for sentencing proceedings in cases in which the defendant is convicted on or after April 24, 1996." *See* § 3663A, historical and statutory notes; *United States v. Mancillas*, 172 F.3d 341, 342 n.6 (5th Cir. 1999). Thus, the MVRA applies here since Myers was sentenced in 1998, well after the effective date of the MVRA.

The $40,256.02 in restitution imposed by the district court reflected the amount of damages that was done to the RV that Myers stole in Florida. The MVRA required the district court to order the full amount of restitution, without regard for Myers' economic circumstances and ability to pay. *See* 18 U.S.C. § 3664(f)(1)(A) ("In each order or restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant"); *United States v. Szarwark*, 168 F.3d 993, 997 (7th Cir. 1999); *United States v. Harvey Andrew REA*, 169 F.3d 1111 (8th Cir. 1999); *United States v. Coates*, 178 F.3d 681, 683 (3rd Cir. 1999). The MVRA thus precluded the district court from considering Myers' financial circumstances in determining whether to require restitution. Therefore, even assuming the district court failed to make such findings, there was no error.[2] We note, however, that the district court did consider Meyer's

---

[2] The cases cited by Myers' for the proposition that the district court had to make such findings are inapposite as they addressed pre-MVRA law. *See United States v. Dupre*, 117 F.3d 810, 824 (5th Cir. 1997); *United States v. Thompson,* 113 F.3d 13, 15 (2d Cir. 1997). Even these cases do not require specific findings, they only require that the district court consider the defendant's financial circumstances in ordering restitution. In recognizing Meyers' inability to pay both a fine and

**11**

financial circumstances. The court stated at Myers' sentencing hearing that "it does not appear that this defendant has the financial ability to pay both restitution and a fine . . . ."

Whether the district court erred in ordering Myers to pay the full amount of the restitution immediately is a different story. The MVRA does authorize the district court to direct the defendant to pay in a single, lump sum payment. 18 U.S.C. § 3664(f)(3)(A). However, the MVRA requires that the district court consider the "financial resources of the defendant" in determining the schedule under which the restitution is to be paid. 18 U.S.C. § 3664(f)(2)(A). *See also, Harvey Andrew REA*, 169 F.3d at 1114 (remanding on issue of restitution payment schedule where district court failed to consider defendant's financial circumstances in requiring a lump sum payment); *Coates*, 178 F.3d at 683 (same). *But see Szarwark*, 168 F.3d at 997 (citing 18 U.S.C. § 3664(f)(2)-(3) for the proposition that the district court "may" take the defendant's financial status into account when determining a payment schedule).

There was no specific statement in the PSR as to immediate payment. However, the PSR noted, under the heading "Financial Condition: Ability to Pay," that Myers had "a negative net worth of ($55,000)" and that "[h]e has no income or expenses which would result in a net monthly cash flow of $0." The PSR clearly suggests that Myers had no assets and absolutely no ability to pay the restitution immediately. It was plain error to conclude that Myers was able to immediately pay over $40,000 in restitution. Since the district court plainly erred in requiring immediate payment of the restitution, we remand the issue of the schedule of payment of that restitution.

## III.    CONCLUSION

Myers' conviction and sentence is AFFIRMED, except for the requirement that he pay the full amount of restitution immediately, which is VACATED and REMANDED with instructions for the district court to consider the schedule of the payment of the restitution.

restitution, the district court considered the defendant's financial circumstances.