# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-10725
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
March 17, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

VENCENT SCALES,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:13-CR-231

Before HIGGINBOTHAM, ELROD, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

The opinion of September 11, 2015, is withdrawn and the following is substituted. Vencent Scales pled guilty to theft of government funds. The issue on appeal is whether the district court erred in the manner in which it ordered restitution be paid. Because there was no objection to the order in district court, our review is for plain error. We find none and AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-10725

## FACTS AND PROCEDURAL HISTORY

In district court, Scales admitted that in late 2012 or early 2013, as a "representative payee" for another person, he took Social Security benefits of over $1,000 and converted them to his own use. The offense took place in the Northern District of Texas.

Scales pled guilty to theft of government funds in violation of 18 U.S.C. § 641. The district court sentenced him to 60 months of imprisonment and three years of supervised release. The court also found that Scales owed $29,427.37 in restitution, payable immediately. Separately and as a condition of supervised release, the court set a payment schedule for restitution. Scales was to make payments of $100 per month, beginning 60 days after he was released from prison. The balance was to be paid 60 days prior to the end of the term of supervised release. Scales challenges the payment schedule for restitution, arguing the district court failed to give adequate consideration to his financial circumstances or ability to pay.

No objection to the amount of restitution or the manner in which it was to be paid was made in district court. On appeal, Scales's counsel initially filed a brief under *Anders v. California*, 386 U.S. 738 (1967), concluding there were no non-frivolous issues on appeal. We disagreed and ordered a new brief to be filed addressing the district court's restitution order. We identified a two-part issue, the first part broader and the second more focused:

> Counsel does not address or analyze whether the district court complied with its obligation to consider "financial resources and other assets of the defendant" in determining the schedule under which a restitution order is to be paid. . . . Specifically, counsel does not address or analyze the condition of supervised release that Scales make restitution payments over the course of his term of supervised release and that any unpaid balance shall be paid in full 60 days prior to the termination of the term of supervised release, and whether, in light of the PSR's recitation of Scales's financial position, this condition creates an "unrealistic

2

payment schedule." *See United States v. Calbat*, 266 F.3d 358, 366 (5th Cir. 2001).

In their briefing in response to this order, both Scales and the Government analyze whether the defendant's lack of financial resources meant that it was error for the district court's order to provide restitution was "payable immediately." We find that question to be sufficiently inherent in the court's briefing order, and also important in the caselaw we discuss, to identify it as a separate issue in our opinion.

We earlier held there was reversible plain error. *United States v. Scales,* 615 F. App'x 230 (5th Cir. 2015) (opinion withdrawn). We have reconsidered and now explain why we reach the opposite conclusion.

## DISCUSSION

The parties disagree about the applicable standard of review. Scales relies on caselaw that provides we should remand to correct an unpreserved error when the ordering of restitution is "in violation of law." *See United States v. Arnold*, 947 F.2d 1236, 1238 & n.3 (5th Cir. 1991). Other decisions have held that we apply *de novo* review when an appellant challenges the threshold decision to award restitution at all, or challenges the specific amount of restitution. *See, e.g.*, *United States v. Nolen,* 472 F.3d 362, 382 (5th Cir. 2006). There is no argument here that restitution could not be ordered. Scales objects only to the schedule of payments in the order. As reflected in the analysis that follows, we consistently apply plain error review to similar unpreserved challenges to restitution. *See, e.g.*, *United States v. Arledge,* 553 F.3d 881, 900 (5th Cir. 2008); *United States v. Miller*, 406 F.3d 323, 327–28 (5th Cir. 2005); *United States v. Myers*, 198 F.3d 160, 168 (5th Cir. 1999).

Because Scales failed to raise this issue in the district court, we review for plain error. *See Arledge*, 553 F.3d at 900. To demonstrate plain error,

No. 14-10725

Scales must show a forfeited error that is clear or obvious and that affects his substantial rights. *See Puckett v. United States*, 556 U.S. 129, 135 (2009). An error is not clear or obvious if it is "subject to reasonable debate." *United States v. Ellis*, 564 F.3d 370, 377–78 (5th Cir. 2009). If Scales makes such a showing, this court has the discretion to correct the error but only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *See Puckett*, 556 U.S. at 135.

### *I. Requirement that restitution be payable immediately*

The Mandatory Victims Restitution Act ("MVRA") instructs courts to order the full amount of restitution without regard to a defendant's ability to pay. *See* 18 U.S.C. § 3664(f)(1)(A). In setting a payment schedule, however, the court must consider the defendant's resources, earnings, and obligations. *See id.* § 3664(f)(2). As the Government stated in the PSR in this case, Scales suffers from mental health problems, has no assets, and has not been employed since 2009. He received Supplemental Security Income benefits of $699 per month, but that amount is subject to garnishment for outstanding child support payments. As a result, the PSR states that Scales "does not have the financial resources to pay a fine and make restitution payments."

We have held a district court plainly erred by ordering a defendant to pay all of restitution immediately when the defendant lacked the resources to do so; the restitution order contained no payment schedule. *See United States v. Myers*, 198 F.3d 160, 169 (5th Cir. 1999). In that case, we remanded for the district court to consider establishing a payment schedule. *Id.*

In another precedent we found no plain error in making restitution payable immediately when a payment schedule was also set that considered a defendant's financial situation. *See United States v. Miller,* 406 F.3d 323, 328 & n.1 (5th Cir. 2005). The payment schedule in *Miller* required $500 monthly

4

payments to begin once the defendant was released from prison. *Id.* Our analysis focused on *Myers*, the only caselaw the defendant cited. *See id.* We concluded *Myers* was "readily distinguishable," then held that the schedule was "not plain error, if it [was] error at all." *Id.* On that issue, the *Miller* court never discussed the two additional factors for plain-error review that must be analyzed when there is error that is plain. Tellingly, *Miller* raised other claims in which we explicitly went through all four plain-error factors. It is therefore evident that we resolved the issue concerning the payment schedule for restitution solely on the basis that any error was not obvious.

Applying that reasoning here, we again note that the district court ordered restitution in a specific amount payable immediately. After announcing that obligation, though, the court stated that failure to pay immediately would not violate Scales's conditions of supervised release if his payments were made "as provided in defendant's conditions of supervised release." The payment schedule required a $100 monthly payment that would begin upon his release from prison, with any unpaid balance of the $29,427.37 to be paid no later than 60 days prior to the end of supervised release.

Because there was no payment schedule in *Myers* to qualify the requirement of immediate payment of all restitution, we, as did the panel in *Miller*, find *Myers* distinguishable and inapplicable. In contrast, in *Miller* — though the order also said restitution was payable immediately — the sentencing order provided that the defendant would not violate his conditions of supervised release if he paid $500 per month upon his release from prison until his term of supervision ended. Scales's payment schedule is similar, though the amount of Scales's monthly payment is only $100.

There is another part of the payment schedule, of course, which is the obligation to pay the balance of restitution by the end of the period of supervised release. We will analyze that feature next. At this point we

5

consider only whether plain error exists when a district court orders all of restitution to be "payable immediately" and then provides a payment schedule demonstrating no actual obligation exists to pay the full balance immediately. We follow *Miller*, as we must, to hold that no clear or obvious error exists in that circumstance, relying solely on the first two factors of plain error review.

Whatever the phrase "payable immediately" means,[1] its effect is limited by the requirement that the manner in which restitution is to be paid must be consistent with a defendant's ability to pay. The validity of the schedule itself is a separate issue, to which we now turn.

### II. *Validity of a payment schedule with a balloon obligation*

Scales's payment schedule requires $100 monthly payments once supervised release begins. There is no argument that the monthly amount was inappropriate due to Scales's financial situation. The only claim as to the schedule is that it was error to require the remaining balance be paid no later than 60 days prior to the end of supervised release. No similar final obligation was mentioned in our *Miller* opinion. In fact, though, a review of the record reveals that Miller's payment schedule also required that the "unpaid balance of the restitution ordered by this judgment shall be paid in full 60 days prior to the termination of the term of supervised release." The same district judge entered both orders, explaining the similarity.

*Miller* controls to the extent of its holding, which is that a district court does not plainly err by ordering restitution be payable immediately if it then also provides a realistic payment schedule. *Id.* at 328. The opinion did not

---

[1] Sentencing orders that require restitution to be paid immediately, or state that it is payable or due immediately, have a long history and have been much litigated. The intent of such language and its operation in practice are explained in CATHARINE M. GOODWIN, FEDERAL CRIMINAL RESTITUTION § 11:30.

address whether a restitution order that required the balance be paid in one final balloon obligation before the end of supervised release affected whether the schedule was "realistic." Indeed, that part of the restitution order was not described in our opinion. "Where an opinion fails to address a question squarely, we will not treat it as binding precedent." *Thomas v. Tex. Dep't of Criminal Justice*, 297 F.3d 361, 370 n.11 (5th Cir. 2002) (citing *Webster v. Fall*, 266 U.S. 507, 511 (1925)).

We look elsewhere for the validity of that final obligation. In one case, we vacated a sentence because the district court imposed an "unrealistic payment schedule" in light of the defendant's poverty. *See United States v. Calbat*, 266 F.3d 358, 366 (5th Cir. 2001). The schedule in *Calbat* compelled the defendant to make unreasonably high payments as soon as he was released from prison. Calbat's restitution obligation was $250,000. *Id.* at 365. The payment schedule required he pay "no more than 20 percent of funds in [his] inmate trust fund" during his term of imprisonment, and then pay the remaining balance through equal monthly payments during his term of supervised release. *Id.* Assuming payments during incarceration were negligible, Calbat would have been released with a remaining balance still near $250,000. Spread over three years of supervised release, Calbat's average annual obligation was approximately $83,000. Before becoming a felon, Calbat earned significantly less, about $39,000 annually. *Id.* at 366.

The court in *Calbat* used a somewhat different methodology — perhaps a best-case scenario for upholding the schedule — to assess the defendant's average annual restitution obligation. The court allocated the obligation equally through all six years of Calbat's sentence (three in prison, and three on supervised release), which would be about $41,000 annually. *See id.* Under that analysis, Calbat would pay $2,000 more each year than he had earned prior to his conviction.

We do not apply *Calbat*'s method of calculation to Scales, namely, to take the entire restitution amount and spread it over his full sentence in order to judge its reasonableness.  That is because the district order set a specific amount for monthly payments.  The order does not provide for payment while Scales is in prison.  Once on supervised release, he is to make $100 monthly payments during the term of supervision.  Scales received $699 each month in Supplemental Security Income before his arrest.  Thus, before becoming a felon, Scales earned significantly more each month than he will be required to pay.  Unlike in *Calbat*, Scales has no obligation to make unreasonably large periodic payments during his term of supervised release.

Applying this precedent, we first hold there is no plain error in setting Scales's monthly payment at $100.  Indeed, Scales does not argue error there. The only possible defect in the payment schedule is the requirement that any unpaid balance be satisfied before supervision ends.

In deciding how a court in a sentencing order should address a possible unpaid balance in restitution at the end of supervised release, we first identify three options that structure our analysis.  One is for the court to ignore the anticipated outstanding balance.  Two others are for the court's order to identify the amount of the anticipated balance, and then either remain silent as to any obligation that the balance be paid during the term of supervised release or, alternatively, require that the balance be paid during the period of supervision.  A fourth conceptual option, stating that the anticipated balance is forgiven, may be beyond the authority of the court under the MVRA, but we need not address that point.  We examine whether what the district court did here, namely, require the balance to be paid at the end of the term of supervision, was plain error.

We start with the purpose of the MVRA, which "is to make victims of crime whole, to fully compensate these victims for their losses and to restore

8

these victims to their original state of well-being." *United States v. Boccagna*, 450 F.3d 107, 115 (2d Cir. 2006). To effectuate that purpose, the MVRA requires district courts to "order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). That requirement may be the reason for the court's ordering Scales to pay the entire amount immediately. Regardless, the district court is to set a payment schedule "pursuant to section 3572." *Id.* § 3664(f)(2). Section 3572 provides for a payment schedule that allows the Government to collect the entire restitution obligation. "[T]he length of time over which scheduled payments will be made shall be set by the court, but shall be the shortest time in which full payment can reasonably be made." *Id.* § 3572(d)(2).

In setting a schedule, the district court must consider the defendant's financial situation. *Id.* § 3664(f)(2). Importantly, this initial determination of the defendant's ability to pay is subject to later revision during the term of supervision, which allows a district court to increase the payment amount:

> A restitution order shall provide that the defendant shall notify the court and the Attorney General of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution. The court may also accept notification of a material change in the defendant's economic circumstances from the United States or from the victim. The Attorney General shall certify to the court that the victim or victims owed restitution by the defendant have been notified of the change in circumstances. Upon receipt of the notification, *the court may, on its own motion, or the motion of any party, including the victim, adjust the payment schedule, or require immediate payment in full, as the interests of justice require.*

*Id.* § 3664(k) (emphasis added).

In summary, the MVRA requires the district court to: (a) order the full amount of restitution; (b) establish an initial payment schedule that takes into consideration the defendant's financial situation; and (c) respond to any change

in the defendant's economic condition by adjusting the schedule. All of this has the goal of making "full payment" in the shortest time possible.

Thus, a court at the time of sentencing will establish a payment schedule that takes into account a defendant's ability to pay. Likely, if the total restitution is a substantial amount, the schedule will not result in payment of the entire amount. In that circumstance, one proper issue for the court throughout the term of the sentence is whether the defendant can pay more. Under Section 3664(k), defendants must notify the court of material changes in their financial situation, an obligation that "accounts both for windfalls and for tighter times." *United States v. Cheal*, 389 F.3d 35, 53 (1st Cir. 2004).

All this means that the deficiency resulting from a defendant's satisfaction of a relatively modest payment schedule may in proper circumstances be reduced by increasing the payment amounts during the period of supervision. Here, the district court provided that the deficiency must be satisfied in full by a final lump-sum payment before supervision ends. Even if it is unlikely a defendant will be able to pay a large balance, it is not plain error for a court, in a sentencing order, to leave open the possibility that it might require an additional payment near the end of supervised release if unexpected funds are suddenly available. The MVRA explicitly provides that if an individual becomes entitled to "substantial resources from any source, including inheritance, settlement, or other judgment, during a period of incarceration," the court may require that those amounts be used to pay restitution. 18 U.S.C. § 3664(n). Making full payment of restitution a condition of supervised release is consistent with the statutory right to draw on unanticipated resources to pay restitution. We consider the balloon payment to be a placeholder, or a way in which a final accounting may be done, a means by which payment of the largest amount of restitution possible can be made a condition of supervised release.

No. 14-10725

Another way to have described that final payment in the sentencing order would be to order a final payment of the maximum amount of restitution consistent with a defendant's economic circumstances at the time that supervised release is scheduled to end, capped by the total restitution owed. That would maintain the possibility of revoking supervised release for failure to pay. The exact amount of that final payment is unknowable at the time of sentencing. We consider what the district court did here as accomplishing the same result in a manner in which there is no clear or obvious error.

In holding that it is not plain error to require full payment of restitution as a final condition of supervised release, we rely on the point that enforcing the obligation requires proof of an ability to pay. A district court may not revoke supervised release simply because the person does not make the final balloon payment. Instead, the court must first determine whether there was a willful refusal to pay. *See United States v. Payan*, 992 F.2d 1387, 1396 (5th Cir. 1993).[2] If the district court determines Scales has willfully refused to pay any amount, either the $100 per month or some portion of the final obligation,

---

[2] We have held that that when reviewing for plain error, the possibility of modification of a term of supervised release is irrelevant to the first three steps of the analysis but may apply as to the final step regarding the exercise of our discretion to correct an error. *United States v. Prieto*, 801 F.3d 547, 554 (5th Cir. 2015). We are not conducting a fourth-step analysis here. Such cases as *Prieto* focus on the immediate effects on a defendant of a term of supervision, an appellate focus that should not be postponed because of the possibility of later modification. As we recently said, quoting another circuit, the right of "a future court to modify a sweeping ban on computer or internet use does not immunize the ban from an inquiry that evaluates the justification for the ban in the first instance. Otherwise, in the guise of delegation to a future decision-maker, sentencing courts could abdicate their responsibility to assess the compatibility of supervised release conditions with the goals of sentencing." *United States v. Duke*, 788 F.3d 392, 401 (5th Cir. 2015) (quoting *United States v. Ramos*, 763 F.3d 45, 61 (1st Cir. 2014)). Unlike the challenged conditions in *Prieto* and *Duke*, Scales's end-of-supervision balloon payment is not an immediate and ongoing obligation whose review should not be postponed. As we have already discussed, the balloon obligation is not plainly erroneous because the MVRA requires restitution to be ordered in full, 18 U.S.C. § 3664(f)(1)(A), and any payment schedule "shall be the shortest time in which full payment can reasonably be made," *id.* § 3572(d)(2). The balloon payment maintains the possibility that a larger amount can be paid ere the end of supervised release.

11

or if the court uses Section 3664(k) to increase the monthly payment due to the defendant's changed economic circumstances, it would seem that a new appeal could be taken. While a single dispositive appeal is the norm as to a defendant's sentence, the district court's continuing enforcement of the restitution obligation might necessitate subsequent appeals.

We find support for this analysis in *Payan.* The defendant challenged his sentence that required restitution payments as a condition of supervised release, arguing his inability to pay might keep him imprisoned indefinitely. *Id.* at 1395. We rejected the argument, explaining "even if such future collection efforts by the government should prove fruitless, Payan's supervised release still would not be revoked *automatically.*" *Id.* at 1395–96. We relied on a Supreme Court decision that required a court to "inquire into the reasons for the failure to pay" before revoking probation. *Id.* at 1396 (citing *Bearden v. Georgia*, 461 U.S. 660 (1983)). We also explained, according to the Sentencing Guidelines' policy statements on revocation proceedings, that a district court judge need not revoke supervised release after a defendant fails to pay restitution. *Id.* at 1396–97 (citing U.S.S.G. § 7B1.3(a)).

Finally, we noted the Government has other enforcement mechanisms for failure to pay restitution, aside from revocation proceedings. *Payan*, 992 F.2d at 1397–98. Nonetheless, though revocation is not the only tool available to enforce an order of restitution, it is an especially potent option. Thus, the payment schedule here, requiring modest monthly payments and a final balloon obligation, furthers the MVRA's goal of full payment in the shortest time possible without violating a defendant's right not to be incarcerated for being unable to pay restitution.

We restate our conclusions. The district court set a payment schedule that allows Scales to meet his periodic restitution obligations. There is one final and large balloon obligation. If Scales shows he cannot pay the balance

at the end of his term of supervision, further orders from the district court can be entered, but his supervised release cannot be revoked automatically. Whatever is ultimately ordered by the district court, an appeal can be taken at that time to contest any of those new rulings.  As to the restitution order and payment schedule now before us, Scales has no viable claim of plain error.

AFFIRMED.

No. 14-10725

JENNIFER WALKER ELROD, Circuit Judge, concurring in the judgment only:

I write separately to express my view that *United States v. Calbat*, 266 F.3d 358 (5th Cir. 2001), governs this case and establishes that the district court plainly erred by imposing a restitution obligation on Scales which he could not reasonably be expected to pay and of which non-payment subjects him to the threat of incarceration. Because Scales has not briefed the fourth prong of plain error review, I concur in the decision to affirm the district court's order.

The majority opinion correctly concludes that *United States v. Miller*, 406 F.3d 323 (5th Cir. 2005), "controls to the extent of its holding, which is that a district court does not plainly err by ordering restitution be payable immediately if it then also provides a realistic payment schedule." However, because *Miller* "did not address whether a restitution order that required the balance be paid in one final balloon obligation before the end of supervised release affected whether the schedule was 'realistic,'" the majority opinion properly looks to *Calbat* for the validity of that final obligation.

In *Calbat*, the district court ordered Calbat to pay $250,000 in restitution, to begin sixty days after the date of his confinement, with no more than twenty percent of the funds in his inmate trust fund to be withheld for that purpose. 266 F.3d at 365. Calbat was ordered to pay the balance due upon his release in equal monthly installments during his three-year term of supervised release. *Id.* We vacated this restitution order because we held that the payment schedule was unrealistic:

> According to the PSR, at the time of the offense, Calbat was employed as a purchasing manager and earned approximately $39,000 a year. His only assets were a 1995 Pontiac Grand Prix valued at $4800 and his § 401K account, which was valued at $2800. Calbat's debts amount to approximately $1,200. Under the

14

payment schedule imposed by the district court, the average yearly payment required of him, over $41,000, is greater than his yearly income at the time of the offense.  The district court noted at sentencing that "I frankly do not anticipate that he would ever be able to pay the full $250,000."  Absent a large windfall, Calbat will not be able to pay the full amount of restitution within the time ordered by the district court.  This unrealistic payment schedule is particularly troubling in light of the fact that payment of restitution is one of the conditions of Calbat's supervised release.  Calbat could thus be sent back to prison for failure to make restitution payments in a timely manner.  Under these circumstances, we conclude that the district court abused its discretion in setting the payment schedule for the restitution order.

*Id.* at 366.

Applying *Calbat*'s methodology—spreading Scales's total restitution of $29,427.27 over his sixty months of imprisonment and thirty-six months of supervised release—results in monthly payments of about $306.  These payments would be unrealistic.  Scales's presentence report (PSR) notes that he suffers from severe mental and emotional health issues, which, together with his prior incarcerations, have limited his ability to maintain employment.  Before his arrest, Scales had no earned income and received only $699 in monthly SSI benefits, which was subject to garnishment for child support payments.  Scales has no assets, multiple delinquent loans, and outstanding child support obligations.  Based on these facts, the PSR concluded that Scales did not have the financial resources to make any restitution payments.  Thus, just as in *Calbat*, it is unrealistic to expect Scales to be able to pay his restitution in the time allotted.[1]

---

[1] Although the *Calbat* panel did not do so, the majority opinion also calculates the annual payments Calbat would have owed if the restitution were spread over only the three years of supervised release, on the assumption that payments during incarceration would be negligible.  Applying the same calculation to Scales produces average payments of

No. 14-10725

Of course, as the majority opinion notes, Scales was not ordered to pay off his restitution in equal installments as in *Calbat*. Instead, Scales is required to pay $100 per month with the remainder as a balloon payment at the end of his term of supervised release. This difference is immaterial, however, because Scales is no more likely to be able to pay $29,000 in restitution at the end of his thirty-six months of supervised release than he is to be able to spread those payments over the thirty-six months. *Calbat*'s reasoning and holding could just as well have been written about Scales:

> Absent a large windfall, [Scales] will not be able to pay the full amount of restitution within the time ordered by the district court. This unrealistic payment schedule is particularly troubling in light of the fact that payment of restitution is one of the conditions of [Scales's] supervised release. [Scales] could thus be sent back to prison for failure to make restitution payments in a timely manner. Under these circumstances, we conclude that the district court abused its discretion in setting the payment schedule for the restitution order.

*Id.* Given the direct applicability of *Calbat*'s holding, I would hold that the district court here likewise erred in setting an unrealistic payment schedule for Scales as a condition of supervised release, such that non-payment could result in his re-imprisonment, and that the error was plain.

The majority opinion, however, declines to apply *Calbat*'s method of calculation and instead adopts a novel approach, evaluating the restitution payment schedule as if the district court had only ordered the periodic payments without the lump sum at the end. Although the district court's judgment orders that "[a]ny unpaid balance of the restitution ordered by this judgment shall be paid in full 60 days prior to the termination of the term of supervised release," the majority opinion "consider[s] the balloon payment to

---

approximately $817 per month, which, as in *Calbat*, exceeds Scales's pre-incarceration income.

16

be a placeholder, or a way in which a final accounting may be done, a means by which payment of the largest amount of restitution possible can be made a condition of supervised release" by "leav[ing] open the possibility that [the district court] might require an additional payment near the end of supervised release." The majority opinion concludes that the $100 monthly payments are reasonable in isolation, and that imposition of the balloon payment was not plain error because Scales's failure to pay it will not result in automatic imprisonment. The majority opinion states that if Scales cannot pay the balloon payment at the end of his term of supervision, "further orders from the district court can be entered," and "[w]hatever is ultimately ordered by the district court, an appeal can be taken at that time to contest any of those new rulings."

The majority opinion's approach is contrary to our precedent, including the cases on which the majority opinion relies. In those cases, we have consistently evaluated the reasonableness of the payment schedule as a whole, not the reasonableness of each required payment. *See Calbat*, 266 F.3d at 366 ("Absent a large windfall, Calbat will not be able to pay *the full amount of restitution within the time ordered* by the district court. This *unrealistic payment schedule* is particularly troubling in light of the fact that payment of restitution is one of the conditions of Calbat's supervised release. . . . Under these circumstances, we conclude that the district court abused its discretion in setting *the payment schedule* for the restitution order.") (emphasis added); *Miller*, 406 F.3d at 328 ("In determining *the manner and schedule with respect to which restitution will be paid*, . . . a court must consider . . . the defendant's financial resources.") (emphasis added).

In the face of this uniform precedent, the majority opinion does not cite to any case in which we have avoided addressing the reasonableness of the restitution payment schedule as a whole by determining that some of the

required payments are realistic and that any unrealistic payments need not yet be addressed. This approach is not only novel; it also violates our longstanding policy against piecemeal appeals by preventing Scales from challenging the requirement that he make a patently unreasonable balloon payment at the time the condition is imposed and instead suggesting that he can separately appeal a future order enforcing this condition. *See, e.g.*, *Switzerland Cheese Ass'n, Inc. v. E. Horne's Mkt., Inc.*, 385 U.S. 23, 24 (1966) ("Unlike some state procedures, federal law expresses the policy against piecemeal appeals."). The majority opinion attempts to pragmatically reconcile the Mandatory Victims Restitution Act's requirements that the full amount of restitution be ordered and that the payment schedule be reasonable in light of the defendant's ability to pay, but by encouraging multiple appeals, the resulting approach is far from practical. Indeed, the long-established principle behind the policy against piecemeal appeals is the impracticality and inefficiency of bringing separate challenges that could otherwise be brought together. *See Forgay v. Conrad*, 47 U.S. 201, 205 (1848) ("In limiting the right of appeal to final decrees, it was obviously the object of the law to save the unnecessary expense and delay of repeated appeals in the same suit; and to have the whole case and every matter in controversy in it decided in a single appeal."). The majority opinion sets no limit on the application of its approach so as to prevent every required payment from providing the basis of an appeal, but even where it results in only two appeals, the majority opinion's approach unnecessarily increases the demands on judicial resources.

Moreover, as the majority opinion acknowledges, our precedent dictates that the possibility of future modification of a supervised release condition has no bearing at all on prongs one through three of plain error review and is only a factor under prong four. *United States v. Prieto*, 801 F.3d 547, 554 (5th Cir. 2015) ("While the modifiable nature of supervised-release conditions does not

insulate them from third-prong scrutiny, it weighs heavily in our consideration of the fourth prong."); *see also United States v. Caravayo*, 809 F.3d 269, 275 n.4 (5th Cir. 2015) ("[T]he possibility of future judicial modification has no bearing on whether the district court abused its discretion today."). The majority opinion nevertheless disregards this precedent, concluding that cases like *Prieto* "focus on the immediate and questionable effects on a defendant of a term of supervision," whereas the majority opinion describes the balloon payment as "maintain[ing] the possibility that a larger amount can be paid ere the end of supervised release."

This is a false distinction. The balloon payment does far more than "leave open the possibility that [the district court] might require an additional payment near the end of supervised release," as the majority opinion characterizes it. The conditions imposed on Scales presently require him to pay off the balance of his restitution sixty days before the end of his term of supervised release. This requirement is already imposed in a binding court order, and is not a future "possibility." The majority appears to suggest that Scales may disregard this requirement and trust that the district court will decide not to re-imprison him for the violation after inquiring into the reasons for his failure, as required in *United States v. Payan*, 992 F.2d 1387, 1396 (5th Cir. 1993). *But see id.* (explaining that if the district court determines that the defendant "made all reasonable efforts to pay the fine or restitution but was still unable to do so through no fault of his own, the court must consider alternative means of punishment in lieu of more imprisonment" but imprisonment is still permitted "if alternative measures are not adequate to protect the government's interest in punishment and deterrence"); *Calbat*, 266 F.3d at 366 (vacating unrealistic payment schedule based on possibility of future revocation of supervised release for non-payment). The majority opinion cites no authority suggesting that an unlawful condition of supervised release

does not affect a defendant if the district court is unlikely to punish a violation of the condition.  Nor does such a rule, which invites defendants to violate their supervised release conditions if punishment is unlikely, promote respect for the courts and the rule of law.

In sum, the restitution schedule ordered in this case is patently unrealistic.  Indeed, the majority opinion does not suggest that Scales will be able to comply with the required payment schedule.  Noncompliance subjects Scales to the threat of re-imprisonment.  Under *Calbat*, therefore, the district court erred by imposing the unrealistic payment schedule as a condition of supervised release, and the error was plain.  The majority opinion avoids this conclusion only by creating a novel approach that is at odds with our precedent. I therefore do not join the majority opinion's analysis of prongs one and two of plain error review.[2]

Nevertheless, I concur in the judgment because Scales has not briefed the fourth prong of plain error review.  *See, e.g.*, *United States v. Rivera*, 784 F.3d 1012, 1019 (5th Cir.) ("We have . . . refused to correct plain errors when, as here, the complaining party makes no showing as to the fourth prong."), *reh'g denied*, 797 F.3d 307 (5th Cir. 2015).  Accordingly, I concur in the judgment only.

---

[2] The majority does not reach prong three of plain error review.  Under our precedent, Scales has established that the district court's error affects his substantial rights.  *See Prieto*, 801 F.3d at 554 (noting that "the modifiable nature of supervised-release conditions does not insulate them from third-prong scrutiny"); *Calbat*, 266 F.3d at 366 (vacating sentence where Calbat "could" be sent back to prison if he did not make his required restitution payments).